UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                   :

NATHANIEL HENDERSON,               :

                           :         13 Civ. 6792 (PAE)

                   Plaintiff,       :

                           :        OPINION & ORDER

           -v-                :

                           :

NATIONAL RAILROAD PASSENGER CORP.,  :

                           :

                Defendant.    :

                           :

------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Before the Court is an application by defendant National Railroad Passenger Corp. ("Amtrak") for a protective order that would: (1) preclude plaintiff Nathaniel Henderson ("Henderson") from disclosing certain materials received in discovery to the public; and (2) specify that such materials may be used only in support of this litigation.

      Amtrak seeks such a protective order for the following six categories of information: (1) the internal investigation report and draft investigation report concerning the incident, on May 18, 2012, in which Henderson was injured; (2) the notes of the investigators who conducted that investigation; (3) three audio CDs containing recordings of witness interviews from that investigation; (4) audio recordings of calls and radio communications between Amtrak personnel and the "Penn Station Central Control" and the "Amtrak Trouble Desk" on May 18, 2012; (5) the training and safety histories of 10 Amtrak employees; and (6) an Amtrak financial invoice for East River Tunnel work.  Henderson opposes the issuance of a protective order as to the materials in categories one (1), two (2), three (3), and four (4).

For the reasons that follow, Amtrak has met the showing of good cause to justify a protective order under Federal Rule of Civil Procedure 26(c) for the materials in categories one (1), two (2), three (3), five (5), and six (6).  Accordingly, Amtrak's application for a protective order is granted as to the materials in those categories.  Henderson may not disclose these materials to the public, and may only use the materials in connection with this litigation.  However, because Amtrak has failed to show good cause to limit dissemination of the materials in category four (4), Amtrak's application for a protective order as to those materials is denied.

## I.      Background

On September 25, 2013, Henderson filed his initial Complaint in this case, alleging that he had been injured in two accidents caused by Amtrak's negligence.  Dkt. 1.  The first injury occurred on November 18, 2010, when Henderson slipped on the steps of the headquarters trailer located in Sunnyside Yard, Queens.  *Id.*  The second injury occurred on May 18, 2012, when Henderson was struck by a train.  *Id.*

On April 3, 2014, Amtrak applied for a protective order to cover six categories of evidence—solely concerning the second accident—which Amtrak was in the process of producing in discovery.[1]  Dkt. 14.  On April 9, 2014, the Court issued an Order directing Amtrak to provide these materials to Henderson, subject, provisionally, to the requested protective order.  Dkt. 16.  The Court also directed Amtrak to submit these materials to the Court for *in camera* review.  On April 14, 2014, Amtrak submitted the materials to the Court, along with a letter brief setting out Amtrak's justification for seeking a protective order.  Dkt. 20 ("Def. Br.").  On May

---

[1] The parties have engaged in fact discovery since December 19, 2013.  Dkt. 9.  The original deadline for the close of fact discovery was April 18, 2014; however, the parties requested, and received, two extensions—the first extended the deadline to July 11, 2014, Dkt. 18, and the second extended it to August 15, 2014, Dkt. 23.

7, 2014, the Court directed Henderson to respond.  Dkt. 19.  On May 13, 2014, Henderson

submitted his opposition.  Dkt. 21 ("Pl. Br.").

## II.    Legal Standards

Courts have an inherent equitable power to grant protective orders.  *See Seattle Times Co.*

*v. Rhinehart*, 467 U.S. 20, 35–36 (1984).  Under Federal Rule of Civil Procedure 26(c):

> A party or any person from whom discovery is sought may move for a protective
> order in the court where the action is pending . . . .  The court may, for good cause,
> issue an order to protect a party or person from annoyance, embarrassment,
> oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c).  This equitable power includes prohibiting the disclosure of certain

materials.  *See* Fed. R. Civ. P. 26(c)(1)(A).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order

is appropriate and what degree of protection is required."  *In re Parmalat Sec. Litig.*, 258 F.R.D.

236, 242 (S.D.N.Y. 2009).  "The unique character of the discovery process requires that the trial

court have substantial latitude to fashion protective orders."  *Seattle Times Co.*, 467 U.S. at 26;

*see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 414–15 (E.D.N.Y. 2007) ("Much of the

material produced in discovery is neither incorporated in motions made to the court nor

admissible at trial.  In order to mitigate the substantial risk to litigants' privacy and other rights

posed by the expansive scope of pretrial discovery, courts are given broad discretion in Rule

26(c) to craft sealing orders . . . .").

A Rule 26(c) order "prohibiting dissemination of discovered information before trial is

not the kind of classic prior restraint that requires exacting First Amendment scrutiny."  *Seattle*

*Times Co.*, 467 U.S. at 33.  Accordingly, such an order may be issued if it:  (1) is limited to the

context of pretrial civil discovery; (2) does not restrict the dissemination of information if gained

from other sources; and (3) is justified by a showing of "good cause" as required by Rule 26(c).

*Id.* at 37.  "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.'"  *In re Zyprexa Injunction*, 474 F. Supp. 2d at 415.  "[I]t is the burden of the party seeking the order to show that good cause exists for issuance of the order."  *Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913 (LBS), 2012 WL 3288240, at *9 (S.D.N.Y. Aug. 6, 2012) (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)).

The district courts within this Circuit have diverged as to the showing necessary to establish "good cause."  Some have held that a party seeking a protective order must make "a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection"; others have "dispensed with the specificity requirement, only demanding that the moving party show good cause."  *See Schoolcraft v. City of New York*, No. 10 Civ. 6005 (RWS), 2013 WL 4534913, at *3 (S.D.N.Y. Aug. 27, 2013) (citation omitted); *see also In re Parmalat*, 258 F.R.D. at 244 n.4 (S.D.N.Y. 2009) (describing the same split between circuit courts).  The Second Circuit has yet to address this matter directly; however, it has "issued several opinions that cite to Rule 26(c)'s good cause requirement without noting an attendant specificity requirement."  *Schoolcraft*, 2013 WL 4534913, at *3 (citing cases).  Notably, the district courts that *have* applied the specificity requirement have all done so in the context of applications for protective orders seeking to prevent harm to commercial enterprises.  *See id.* (citing *Topo v. Dhir*, 210 F.R.D. 76, 77 (S.D.N.Y. 2002)).  Here, Amtrak does not seek a protective order for such a purpose.  Therefore, the weight of authority militates against requiring "a particular and specific demonstration of fact."  *Id.*

Accordingly, Amtrak need only establish good cause for the Court to issue the requested protective order.  "In determining whether good cause has been shown, courts must weigh the private interests advanced against the public's interest in the information contained in the

4

documents." *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 515 *aff'd*, 800 F. Supp. 2d 453

(E.D.N.Y. 2011) *aff'd sub nom. Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013)

(citations omitted); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d at 415 ("Balancing

requires taking into account litigants' privacy rights as well as the general public's interest in the

information.").  None of the materials at issue here are "judicial documents."  *See Dorsett*, 762 F.

Supp. 2d at 516 ("[C]ourts have held that unfiled documents do not qualify as judicial.");

*Newsday LLC*, 730 F.3d at 168 (holding that an internal affairs report, "as it was used or as it

could be expected to be used . . . is not the type of judicial document to which the First

Amendment right attaches").  Accordingly, there is "no presumption of public access," and

Amtrak "need only make a baseline showing of good cause in order to justify the imposition of a

protective order."  *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F.

Supp. 2d 55, 62 (S.D.N.Y. 2007).

## III.    Discussion

The protective order requested by Amtrak indisputably satisfies the first two

requirements established by *Seattle Times*:  It is limited to the context of pretrial civil discovery

and it would not restrict the dissemination of information gained from sources outside of the

discovery context.  The dispositive question, then, is whether Amtrak has met the requisite "good

cause" showing as to each set of materials for which it seeks to limit disclosure.

Of the six categories of material for which Amtrak seeks a protective order, Henderson

disputes the need for a protective order with respect to four[2]:  (1) the internal investigation report

---

[2] As noted, Amtrak also seeks a protective order to cover the training and safety histories of 10
Amtrak employees and a financial invoice for East River Tunnel work (previously referred to as
categories five (5) and six (6).  Henderson does not dispute the existence of good cause for a
protective order to cover these materials, and the Court, independently, finds that Amtrak has
established good cause.  Courts in this district routinely issue protective orders to cover the

of the May 18, 2012 incident, and drafts of that report; (2) the investigators' notes regarding and taken in the course of that investigation; (3) the audio recordings of witness interviews conducted pursuant to that investigation; and (4) the audio recordings of the "Penn Station Central Control" and "Amtrak Trouble Desk" communications of May 18, 2012.  The Court addresses each set of materials in turn.

First, Amtrak has established good cause to limit the materials reflecting upon its internal investigation.  Permitting public disclosure of Amtrak's report of its internal investigation, and the draft of that report, would potentially undermine Amtrak's willingness and/or ability to conduct, in the future, candid, reliable and thorough investigations into the cause (or causes) of serious accidents.  Such investigations are a necessary tool to assist Amtrak in developing ways to enhance railroad safety.  However, if Amtrak knew that its internal investigation reports would be aired to the public whenever it was sued in court, Amtrak would have an incentive to exclude embarrassing details, or to "pull punches," and so, too, potentially might persons interviewed in the course of such investigations.  Allowing Amtrak, during the discovery phase of civil litigation, to limit the dissemination of its internal investigation reports to Henderson and his counsel, and their agents, mitigates that risk.  Therefore, Amtrak has made the necessary minimal showing of good cause to subject its internal investigation reports (and drafts thereof) to the limits that the requested protective order would impose.  On the other side of the equation, Henderson has failed to identify any harm—and the Court perceives none—that he would suffer

---

employment documents of non-parties.  *See, e.g.*, *Sterbens v. Sound Shore Med. Ctr. of Westchester*, No. 01 Civ. 5980 (SAS) (KNF), 2001 WL 1549228, at *3 (S.D.N.Y. Dec. 5, 2001) (granting protective order to cover personnel files).  As to the financial invoice, the Court agrees with Amtrak that this document, taken out of context, could be mischaracterized or misused, and thus is properly covered by the requested protective order.

from imposing such familiar restrictions.  Further, based on the Court's review of the investigative materials *in camera*, the public's interest in Amtrak's internal investigation reports into this particular accident is minimal.  Accordingly, Amtrak's application for a Rule 26(c) protective order to cover Amtrak's internal investigation reports is granted.

For the same reasons, Amtrak's application for a protective order to cover the second and third categories of materials at issue—the notes of its investigators and the audio recordings of its witness interviews—is granted.  These materials are part and parcel of the same internal investigation addressed above.  As such, public dissemination would similarly stand to undermine the efficacy of future internal investigations.  Moreover, the Court has, again, reviewed these materials *in camera*; the public's interest in the information contained therein is minimal.  Accordingly, Amtrak has, on the same grounds, established good cause to justify a protective order for its investigators' notes and the audio recordings of their witness interviews.

The only remaining materials at issue are the recordings of communications between Amtrak employees and the "Penn Station Central Control" and "Amtrak Trouble Desk" on May 18, 2012.  Unlike the prior sets of materials, these do not bear on Amtrak's internal investigation but are instead in the nature of "primary source" evidence.  Disclosure of these records would therefore not compromise Amtrak's ability in the future to carry out fulsome and reliable internal investigations.  The only basis Amtrak provides for a protective order to cover this material is the claim that these audio recordings could "be uploaded onto the Internet."  Def. Br. at 2.  Having reviewed these materials *in camera*, it is elusive to the Court, even assuming this were to occur, how public disclosure of these recordings would be harmful to Amtrak in any way, and Amtrak's half-hearted attempt to justify a protective order for these materials is unconvincing.  Even though Amtrak need only make a minimal showing of good cause to justify a protective order for

these non-judicial documents, Amtrak has, as to this one category of materials, failed to make such a showing.

## CONCLUSION

For the foregoing reasons, the Court enters a protective order to cover the following five categories of information:  The investigation report and draft investigation report concerning the incident, on May 18, 2012, in which Henderson was injured; the notes of the investigators who conducted that investigation; three audio CDs containing recordings of witness interviews from that investigation; training and safety histories of 10 Amtrak employees; and an Amtrak financial invoice for East River Tunnel work.  Henderson may not disclose any of these materials to the public, and may only use the materials in support of this litigation.  However, Amtrak's application for a protective order to cover audio recordings of calls and radio communications between Amtrak personnel and the "Penn Station Central Control" and the "Amtrak Trouble Desk" on May 18, 2012 is denied.

This decision is, of course, without prejudice to Henderson's right to move to vacate or modify this protective order at a later date, including when and if the materials covered by it are implicated either by pretrial motions or trial proceedings.  The Court is mindful that "the facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents."  *Newsday LLC*, 730 F.3d at 166 (citing *In re Midland Nat'l Life Ins. Co.*, 686 F.3d 1115, 1120 (9th Cir. 2012); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988)).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 14, 2014
       New York, New York